IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3056-FL

| | |
|---|---|
| NELSON ALEXANDER CARABALLO, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) ) | ORDER |
| JOHN INGRAM; PHIL PERRY; JANE EVANS; JAMES STEWART; and SHANE GUNNELL, ) ) ) ) ) | |
| Defendants. ) | |

The matter comes before the court on the motion for summary judgment (DE # 25) pursuant to Federal Rule of Civil Procedure 56 filed by defendants Detention Officer Jane Evans ("Evans"), Detention Officer Shane Gunnell ("Gunnell"), Sheriff John Ingram ("Ingram"), Captain Phil Perry ("Perry"), and Sergeant James Stewart ("Stewart"), to which plaintiff responded. Also before the court are plaintiff's motion to appoint counsel (DE # 30) and plaintiff's cross-motion for summary judgment (DE # 31). Defendants responded to plaintiff's cross-motion for summary judgment. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment, but denies plaintiff's motion to appoint counsel and cross-motion for summary judgment.

**STATEMENT OF THE CASE**

On April 20, 2010, plaintiff, then a pretrial detainee, brought this action pursuant to 42 U.S.C. § 1983. Plaintiff alleged defendants violated his rights pursuant to the Due Process Clause

of the Fourteenth Amendment to the United States Constitution because they acted with deliberate indifference to low temperatures in his cell while he was incarcerated at the Brunswick County Jail. On December 22, 2010, plaintiff filed a motion for entry of default pursuant to Federal Rule of Civil Procedure 55. Defendants subsequently filed an answer and a response to plaintiff's motion for entry of default. On February 17, 2011, the court denied plaintiff's motion for entry of default and entered an initial order. The court then issued a scheduling order.

On August 2, 2011, defendants filed a motion for summary judgment, arguing that plaintiff has not established a constitutional violation. Plaintiff subsequently filed a motion to appoint counsel, and a cross-motion for summary judgment. Plaintiff's cross-motion for summary judgment raised several new claims, including a claim that defendants acted with deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment to the United States Constitution, retaliated against plaintiff, and violated his rights pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff also alleged other Fourteenth Amendment due process conditions of confinement claims, including that the segregation unit at times was subject to lock-down. Defendants responded to plaintiff's cross-motion for summary judgment arguing that the court should not consider plaintiff's new claims because plaintiff did not request leave of court to amend his complaint. Plaintiff filed a reply to his cross-motion for summary judgment.

On January 4, 2012, the court entered an order directing defendants to provide a complete copy of all of the Brunswick County Jail's medical records for plaintiff from October 2009 through the date he was transferred to Central Prison. Defendants complied with the court's January 13, 2012, order. Although plaintiff requested an extension of time to respond to the court's January 4,

2

2012, order, he failed to respond.

## STATEMENT OF FACTS

The facts seen in the light most favorable to plaintiff are as follows. Plaintiff was incarcerated at the Brunswick County Jail (the "jail") from November 25, 2009, through November 4, 2010, except for a period of fourteen (14) days when plaintiff was transferred to Dorthea Dix Hospital in Raleigh, North Carolina, in order to receive a mental health evaluation. Evans Aff.[1] ¶ 4. While housed at the jail, plaintiff spent a portion of his confinement in segregation because he violated the jail's disciplinary rules and ignored jail officers' instructions. Id. Plaintiff contends that from October 2009,[2] through March 2010, there was no heat in the unit where he resided. Plaintiff alternatively contends that the heat would come on during this time period for approximately five minutes and then turn off. Plaintiff estimates that this occurred on approximately three occasions from October 2009, through March 2010. Plaintiff states that he used cut socks as sleeves to help him keep warm. Plaintiff asserts that the jail conditions aggravated his asthma and resulted in frost bite.

The jail's Maintenance Supervisor James W. Carter ("Carter") submitted an affidavit in support of defendants' motion for summary judgment and provided information regarding the jail's heating and cooling system. Carter Aff. ¶ 2. In particular, Carter states that the jail has a total of twenty-six (26) heating and air-conditioning units, and each of the units are pre-set to a temperature of between seventy-one (71) to seventy-four (74) degrees in accordance with state regulations.

---

[1] Evans, a Brunswick County Jail detention officer and defendant in this action, submitted an affidavit in support of defendants' motion for summary judgment. See Evans Aff. ¶ 1.

[2] The court notes that plaintiff was not incarcerated at the jail in October 2009. Evans Aff. ¶ 4.

Carter Aff. ¶ 2; Evans Aff. ¶ 2. The units at the jail run on an automatic, computer-programmed switch that heats and cools to match the programed temperatures, and only a few people have the authority to change the temperature settings. Carter Aff. ¶ 2.

The temperature at the jail is checked daily by a county maintenance technician. Evans Aff. ¶ 2. During the time plaintiff was incarcerated at the jail, several gas valves on the heating units were out of service for a few days and needed to be replaced.[3] Carter Aff. ¶ 3. The heating system, however, continued to work and the jail's temperature remained at approximately seventy (70) degrees Fahrenheit. Evans Aff. ¶ 4. In the event of any malfunction in the system, the county has a contract with a local heating and air-conditioning company to do repairs. Id. ¶ 2.

## DISCUSSION

A.  Motion to Appoint Counsel

There is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him."). Because plaintiff's claim is not complex,

---

[3] Maintenance records reflect that there was no breakdown in the jail's heating and air-conditioning system during the time of plaintiff's confinement. Carter Aff. ¶ 3.

4

and where he has demonstrated through the detail of his filings he is capable of proceeding *pro se*, this case is not one in which exceptional circumstances merit appointment of counsel. Therefore, plaintiff's motion to appoint counsel is DENIED.

B.  Motion for Summary Judgment

  1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

  2.  Analysis

    a.  Denial of Grievance Process

Plaintiff alleges that defendants have denied him access to the courts in violation of the First Amendment to the United States Constitution because they refused to provide him with grievance forms and interfered with his efforts to exhaust his administrative remedies.[4] However, inmates generally do not have a constitutional right of access to a grievance process. Daye v. Rubenstein,

---

[4] The court notes that plaintiff appears to allege that his failure to exhaust his administrative remedies for this action resulted in adverse action. Accordingly, the court addresses these allegations, despite plaintiff's failure to raise the same in his complaint.

5

417 F. App'x 317, 319 (4th Cir. 2011) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)). Moreover, plaintiff's alleged lack of access to the jail's grievance process did not interfere with his ability to file or litigate this action. Rather, the court has allowed plaintiff to proceed with this action, and has imposed no adverse action as a result of any failure to exhaust administrative remedies. Thus, the court finds that defendants did not violate plaintiff's First Amendment rights.

      b.     Prison Conditions

Plaintiff asserts defendants acted with deliberate indifference to his conditions of confinement in violation of the Fourteenth Amendment[5] because the jail was not heated from October 2009, through March 2010. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379. Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to demonstrate such an

---

[5] Plaintiff was a pretrial detainee at the time he filed this action. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment of the United States Constitution. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). However, as a practical matter, the contours of the Due Process Clause are coextensive with the substantive constitutional principles applied by the Eighth Amendment to convicted inmates. See Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997), abrogated on other grounds by, Wilkins v. Gaddy, 130 S.Ct. 1175 (2010); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992). Accordingly, plaintiff's Fourteenth Amendment Due Process claims will be analyzed under the Eighth Amendment.

extreme deprivation, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. See Helling v. McKinney, 509 U.S. 25, 33-35 (1993).

Beginning with the objective prong of the Eighth Amendment test, plaintiff states that his alleged cold cell temperature aggravated his asthma and caused frost bite. Defendants submitted the affidavit of Evans, a detention officer at the jail, which states that she reviewed plaintiff's medical records and that plaintiff did not have or complain of any illness related to cold temperatures while plaintiff was at the jail. Evans Aff. ¶ 4. Evans' statements additionally are corroborated by plaintiff's medical records, which do not contain any complaints about his cell temperature, illness related to cold temperatures, or any diagnosis of frost bite. See (DE # 39) Exs. 1 and 2. Plaintiff's medical records, instead, reflect that he received continual care for his childhood asthma while at the jail, including during warm weather months. See id. Exs 1 and 2, and Ex. 2, p. 9. Plaintiff's medical records further reflect that he received treatment for other conditions including tinea pedis (athlete's foot) and mental illness. Id. Ex. 1, pp. 35-36. Plaintiff has not presented any evidence, aside from conclusory allegations, to refute his medical records. This is not sufficient to state an Eighth Amendment claim. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Thus, plaintiff is unable to satisfy the objective prong of the Eighth Amendment test.

The court next considers the subjective prong of the Eighth Amendment test–whether defendants acted with deliberate indifference to the maintenance of the jail's heating and cooling system. As stated, Carter, the maintenance supervisor for the jail, attested to the workings of the jail's heating and cooling equipment during plaintiff's incarceration. Carter Aff. ¶ 2. In particular,

7

Carter stated that the jail's heating and cooling system is monitored by a computer that controls the air flow and temperature, which is set between seventy-one (71) and seventy-four (74) degrees Fahrenheit. Id. The temperatures for the jail's heating and air conditioning units are checked daily by a maintenance technician, and only a few individuals have the authority to set the temperature settings. Evans Aff. ¶ 2 and Carter Aff. ¶ 2. Although Carter testified that several gas valves needed to be replaced during the time period when plaintiff was at the jail, he stated that the heating system continued to work and that the jail was heated by the other heating units. Carter Aff. ¶ 3. Further, Carter testified that the jail's maintenance records reflect that there was no breakdown in the jail's heating and cooling system during the relevant time period. Id. Based upon the foregoing, the evidence in the record reflects that the heating and cooling system at the jail was functioning and maintaining a reasonable temperature during the relevant time period. Plaintiff has not provided any evidence, aside from conclusory allegations, to the contrary. Accordingly, there is no evidence that any defendant knew plaintiff's cell was cold during the relevant time period or that any defendant acted with deliberate indifference.

Even if there was evidence of cold temperatures during the relevant time period, plaintiff still could not establish an Eighth Amendment violation. In particular, the record reflects that inmates were permitted to wear socks on their arms to provide warmth. Evans Aff. ¶ 3. Inmates additionally were provided blankets and sheets, and allowed to exercise or take hot showers. Id. Although plaintiff states that he was unable to use his blanket and sheets for warmth during the day, he does concede that he was permitted to wear socks on his arms, to exercise and to take warm showers. These facts illustrate that defendants did not act with deliberate indifference to plaintiff's cell temperature during the relevant time period. See Dozier v. Sanders, No. 3:09-2309-JMC, 2011 WL

8

846698, * 4 (D.S.C. Mar. 9, 2011) (finding no deliberate indifference to cell temperature where affidavit reflected cell temperatures were kept between sixty-two (62) and seventy (70) degrees), aff'd, 441 F. App'x 975 (4th Cir. 2011); Schowerth v. Ingram, No. 5:10-CT-3054-BO, 2012 WL 254250, *2 (E.D.N.C. Jan. 27, 2012).[6] Based upon the foregoing, the court finds that plaintiff has not established a violation of the Eighth or Fourteenth Amendments, and defendants are entitled to summary judgment for this claim.

    c.    Due Process Violation for Confinement in Segregation

Plaintiff alleges that his due process rights were violated because the cold temperatures in the segregation unit created an atypical hardship in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). In order to retain a liberty interest in avoiding a particular condition of confinement, a plaintiff must demonstrate that the confinement imposed an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 484 (1995).

Here, plaintiff has not alleged that the temperature in the segregation unit was different from the temperature in other portions of the jail. Additionally, the evidence in the records reflects that the entire jail was kept at a consistent and regular temperature. Carter Aff. ¶ 2. Further, there is no evidence that the segregation unit, or any other unit, was kept at an unreasonably cold temperature. Based upon the foregoing, the court finds that plaintiff has not demonstrated an atypical or significant hardship and is unable to establish a due process violation arising out of his incarceration

---

[6] The court notes that the plaintiff in this action also asserts that the temperatures at the Brunswick County Jail were too cold from October 2009, through March 2010. Schowerth, 2012 WL 254250 at *1.

9

in the segregation unit.

C. New Claims

Plaintiff raises several new claims in his cross-motion for summary judgment. Specifically, plaintiff alleges retaliation, that defendants acted with deliberate indifference to his serious medical needs, violated his rights pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and that the segregation unit at times was subject to lock-down. In their response to plaintiff's cross-motion for summary judgment, defendants argue that the court should not consider plaintiff's new claims because he failed to request leave of court, pursuant to Federal Rule of Civil Procedure 15(a), to include any new claims. The court agrees with defendants. Because plaintiff has not moved this court to amend his complaint pursuant to Rule 15(a) to include any new claim, the new claims are not properly before the court and are DISMISSED without prejudice. See United States v. Jones, 842 F.2d 1293, *1 (4th Cir. Mar. 9, 1988); Crump v. N.C. Dep't of Corr., No. 3:05CV325-02-MU, 2009 WL 2738459, *5 (W.D.N.C. Aug. 26, 2009).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 25) is GRANTED. Plaintiff's motion to appoint counsel (DE # 30) and cross-motion for summary judgment (DE # 31) are DENIED. The new claims raised in plaintiff's cross-motion for summary judgment are DISMISSED without prejudice. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 1st day of March, 2012.

LOUISE W. FLANAGAN
United States District Judge